## Case No. 16,681.

### UNITED STATES v. WHITE.

[Hoff. Dec. 58.]

District Court, N. D. California. Jan. 4, 1862.

MEXICAN LAND GRANT—DETERMINATION OF BOUNDARIES.

[The mention in the act of possession of the length of a certain line as fixing its point of termination is not to be regarded as conclusive, merely because, at or near that distance from the starting point, a marked tree is found, which is not identified by any witness as the tree to which measurement was made.]

[This claim was by Charles White, and, after his death, by Ellen White and others, his widow and heirs, for Pala, one square league in Santa Clara county, granted November, 1835, by José Castro to José Higuera. The claim was confirmed by the commission December 19, 1854, and by the district court February 23, 1857. Heard on objections to surveys.]

HOFFMAN, District Judge. The grant in this case was for one square league of land. In the decree of confirmation the boundaries as stated in the record of judicial measurement are adopted, and the extent of the land is declared to be one square league, more or less. Those boundaries are substantially as follows: Commencing at a solar which lies to the south of the rancho, and faces towards the north, and running thence along the foot of the hills 2,500 varas to the Arroyo del Aguage; thence along said stream, towards the west, 2,000 varas, to the sowing lands formerly used by the grantee, and to a marked oak tree; thence southerly, passing by the Laguna de Locaire and the arroyito which rises from the same, 5,500 varas, to the first tree of an oak grove marked as a boundary; thence easterly 1,850 varas, passing along the Arroyo de los Alisos to the foot of the range of hills running from north to south.

It is objected, on the part of the United States, that the lines of the official survey do not conform to the lines thus described, in respect either of their length or the objects indicated as their points of commencement and termination, and a survey has been presented to the court to illustrate how, in the opinion of the parties claiming under the United States, the official surveys should be made. It will be noted that the first line of the judicial measurement is described as running from the solar which looks to the north to the Rincon del Arroyo del Aguage, a distance of 2,500 varas. The objects thus referred to are identified beyond any doubt, but the distance between them is found, on an

accurate measurement, to be about 5,000 varas, or nearly double the distance mentioned in the act of possession. I do not understand it to be claimed, on the part of the United States, that the length of this line should be determined by the call for distance. disregarding the natural objects to which it is to be drawn. But it is contended that the lengths of the second, third, and fourth lines should be those mentioned in the act of possession; and testimony has been taken to prove that, at or near the terminations of the northern and western lines so run, are found the marked oak trees referred to in the record and established as boundary marks.

The most important controversy is as to the length towards the south of the western line. It has already been stated that, according to the record of judicial measurement, the first line was run from the solar north, 50 cordels of 50 varas each, or 2,500 varas, to the rincon. The second or its northern line was drawn west from the rincon to an oak tree on or near the banks of the Arroyo de Aguage, 40 cordels, or 4,000 varas. The third line, from the oak tree, the first of a grove, 110 cordels, or 5,500 varas. It is concluded that the western line should be drawn from an oak tree near the banks of the Aguage, south to another oak, distant 5,143 varas. In length this line more conforms to the length of the western line, as given in the record of judicial measurement, than that run to the oak tree adopted in the official survey; for the latter is distant from the Aguage about 8,863 varas. But it is nevertheless plain, in my judgment, that the official survey is in this particular correct.

It has already been remarked that the position of the solar, the point of beginning of the first or eastern line, and that of the rincon, its point of termination, are determined beyond controversy. The distance between these two points is stated on the judicial measurement to be 50 cordels, or 9,500 varas. The length of the western line parallel to this, is stated in the same record to be 110 cordels, or 5,500 varas. Whatever, then, may in fact have been the length of the cordel used, or the accuracy of the measurement, it is plain that the officer intended to measure, and supposed he had measured, a western line of twice the length of the eastern line. But the eastern line, on accurate survey, is found to be only a quarter of a mile less than 5,000 varas in length. If, then, the western line be measured to the tree contended for by the United States, i. e. of the length of 5,143 varas, the two lines would be of nearly equal length, contrary to the terms of the record that the latter was to be more than double the length of the former.

Again, it is stated in the record that from the tree on the Aguage the line was run "to the south, passing by the Laguna de Locaire and the arroyito which rises from it, to an oak tree the first of a grove, etc." The positions of this laguna and the arroyito issuing from it are identified, I think, beyond reasonable doubt; and even if the laguna be that to the southwest of the one contended for by the claimants, it would only show, that the western line should be extended towards the south, even further than has been done in the official surveys. This laguna is situated at a considerable distance to the south of the ancient house of Higuera. But if the western line be made to terminate at the point contended for by the United States, and the southern line be run thence east to the foot of the hills, it would leave the laguna far to the south.

It seems to have been intended by one of the witnesses on the part of the United States to convey the idea that a laguna formed by a creek which flows from the hills and passes near the house of Higuera, was the Laguna de Locaire referred to in the record. This same creek the witnesses for the United States zealously maintain to be the Arroyo de los Alisos mentioned in the act of possession, as forming the southern boundary. But this theory is inconsistent with the proofs, and even is self-contradictory; and for the following reasons:

1. The act of possession speaks of a laguna and arroyito which issues from it, or to which it gives birth. But the laguna suggested is formed by a creek which flows into it, but which does not flow from it.

2. The record states. that after passing by the laguna, and the little brook which is born of it, a tree was marked, the first of a grove, and from thence running towards the east, they followed the margias of the Arroyo de los Alisos until they reached the foot of the hills. It is obvious that the Arroyo de los Alisos, which was meandered to the foot of the hills in running the southern boundary. was a different stream from the arroyito issuing from the lake which had been passed in running the western line. It is therefore apparent either that the laguna suggested by the witness, into which a brook flows, cannot be the Laguna de Locaire. or, if it be that, the creek flowing into it cannot be the Arroyo de los Alisos of the judicial survey.

3. On the diseño is represented a laguna and small stream issuing from it at a considerable distance to the south of Higuera's house. This laguna, though in the copy of the diseño in the transcript it bears no name, is marked on the original "Laguna de Locaire." It must, therefore, be the same as that mentioned in the act of possession. Its position entirely corresponds with the situation of the laguna identified by the claimants' witnesses as the Laguna de Locaire. But the laguna suggested by the witness for the United States lies to the west of the house, and not to the south. And if the west line be no further protracted towards the south than that laguna the south line will pass close to the house, and even through what is identified by some of the witnesses as the site of the ancient corral of Higuera.

It is for these reasons, in my judgment,

clear beyond dispute, that the Laguna de Lo-caire and arroyito, which was passed when the western line was run, cannot be the laguna and arroyo spoken of by the witnesses for the United States, but that they were situated much farther to the south, and beyond the limits of the survey contended for by the United States. But the length of the western line run by the judicial officer, is further shown by the call for the Arroyo de los Alisos, which the record declares was meandered, after turning to the east, and when measuring the southern boundary.

Much testimony was taken to show that the stream which runs by the house of Higuera, and what is identified by some of the witnesses as his former rodeo ground, is the Arroyo de los Alisos. The claimants contend that the only stream known to the old inhabitants of the county by that name is the stream which is met on turning towards the east after passing the Laguna de Locaire. I think that the proofs greatly preponderate in favor of the latter supposition. Both streams have, it is true, alisos or sycamores upon them, and either might have acquired the name of "Arroyo de los Alisos." But all the older inhabitants—Pico, who was the alcalde who, gave the possession; Chabolla, who is the owner of the adjoining rancho to the south; Hang Bee, who has been in the country 23 years; and others—concur in identifying the more southerly brook as that, and the only one, known as the "Arroyo de los Alisos." If the observations which have been made with regard to the situation of the Laguna de Locaire be just, it follows that the Arroyo de los Alisos of the measurement must lie to the south of it, for the laguna and its arroyito were passed before turning to the east; whereas, if the arroyo contended for by the United States be the alisos, it would have been reached not only before the laguna was passed, but before it was arrived at.

The witnesses for the United States, sensible of the necessity of so far conforming to the description of the western line given in the record of judicial measurement, as to run that line so as to pass a laguna and an arroyito, have attempted to make the more northerly arroyo and a small pond into which it runs satisfy at once the call for the laguna and the Arroyo de los Alisos. But this is, as before remarked, utterly inadmissible, for it is plain that the arroyito which flows from the laguna of the record of judicial measurement and the Arroyo de los Alisos of the same document are wholly distinct streams.

There are also indications of the diseño, and facts testified to by the witnesses for the claimants, which support the views I have expressed. On the diseño is represented to the south and west of the laguna and in the same direction from the house and at the distance of several thousand varas according to the scale, a grove of trees. This is evidently the grove, the first tree of which was marked as the southwest corner. But if the southwest corner be established as contended for by the United States, it will be situated nearly due west from the house, within a very short distance of which the southern line towards the hills will run. On the diseño the house is represented as situated about midway between the grove, on the south, and the Arroyo de Aguage. In the survey proposed by the United States, the house is situated on the extreme southern limit of the tract and almost on the boundary line.

Some of the witnesses for the claimants have identified the positions of the old corral; and the rodeo ground of Higuera. The traces of both these are nearly obliterated. But their positions are positively sworn to by ancient Spanish witnesses, and Mr. Healy, the very intelligent and candid surveyor of Santa Clara county, states that he discovers by the dank and peculiar vegetation of a spot near the house, what he thinks must be the site of the old corral. It is precisely the place where the other witnesses state the corral actually existed. If, then, this testimony be accepted as fixing the positions of the corral and the rodeo ground, it affords another argument against the survey contended for by the United States, for the southern line of that survey passes through the corral leaving its larger portion to the south, while the rodeo ground is wholly excluded.

Some reliance is placed by the United States on the fact that at the southerly termination of the westerly line, as contended for by them, a tree is found with ancient marks upon it. But by whom, and for what purpose these marks were made, we are ignorant. They are said to be of the age of 20 or 25 years, as ascertained by counting the annulations. The one witness for the United States swears they are only 15 years old. If the latter statement be correct, they must have been made subsequently to the date of the judicial measurement, 1835. But the mere existence of a tree with marks upon it, even if ancient, is not enough to outweigh the reasons above enumerated for concluding that the western line could not have terminated at that tree, especially as the stump of another tree is found at the termination of the western line, as contended for by the claimant, which is of the kind (white oak) mentioned in the act of possession, and which is identified by the alcalde, Pico, and adjoining rancho to Chabolla as the one actually marked as a boundary.

From the foregoing, it will be seen that the theory of the United States as to the point of termination of the western line is founded on three principal conditions:

1. The length as given in the record of judicial possession. To which it is answered, that independently of the notorious inaccuracy of such measurements under the former government, it appears in this case that the line was intended to be run more than twice as long as the first line from the solar to the rincon; whereas by the theory of the United States, the two lines would be nearly of the

same length, thus failing to conform to the record on a point as to which so gross a mistake is not conceivable.

2. The identification of the more northerly arroyo as the Alisos. But as to this, we have seen that the preponderance of the testimony is clearly against the theory of the United States, and the evidence of the older and better informed inhabitants unanimously in favor of the claimants; and, further, that the situation of the Laguna de Locaire, and the arroyito flowing from it, demonstrate that the arroyo to the north could not have been the Arroyo de los Alisos of the judicial measurement.

3. The existence of a tree with an ancient mark. But this circumstance, in the absence of testimony showing it to have been marked at the time of the measurement as a corner, is wholly inconclusive, for it may have been marked previously or subsequently, or even at the time, to indicate the course but not the termination of the line, and in view of the other considerations above adverted to, the fact becomes insignificant.

I therefore conclude that the termination of the western line should be that contended for by the claimants and established by the official survey. .

It is not so easy to fix the length towards the west of the northern line along the Aguage. The termination claimed by the United States is a tree bearing an ancient mark, and situated at the distance of 2,160 varas from the rincon. The corner fixed by the official survey is at the distance of 2,895 varas from the rincon. The length of the line, as given in the act of possession, is 40 cordels, of 50 varas each, or 2,500 varas. There is no evidence to snow by whom or for what purpose the mark was made upon the tree claimed by the United States to be the termination. Under ordinary circumstances, the fact that such a tree is found on or near the line described in the act of possession, and at about the distance therein mentioned from the starting point, would be sufficient to fix it as the boundary mark established at the judicial measurement. But in this case the mention of the lengths of the lines, or the number of cordels measured, affords as we have seen, no reliable information. It is difficult to imagine that the alcalde, after measuring a line from the solar to the rincon, of the length, as he declares, of 50 cordels or 2,500 varas, when in fact it is of nearly twice that length, should, with the same cordel and the same measures, have so nearly arrived at the true length of the second line; and the improbability of his having done so is increased by the fact that on proceeding to measure the third or western line, the error is repeated, and the distance from its beginning to its termination is stated at little more than one-half its actual length.

The termination of the northern line is stated by Pico, the alcalde, and Chabolla, the assisting witness, to have been fixed at a point some 800 varas further west than that fixed

in the official survey. But no trees are now standing at the place, and the stumps are those of ash, sycamore and live oak trees (encinos), but not of white oaks, or sobles, as mentioned in the act of possession. Pico accounts for these discrepancies between the actual length of the lines and those stated in the record of possession, by stating that the cordel, after being measured of the length of 50 varas, was doubled, and that the cordels referred to in the act of possession were of 100 varas in length. But even on this computation, the measurement was still far from accurate. Some of the lines being found to exceed, and others to fall short of, the required length.

The statement of Pico is confirmed, however, by a circumstance which renders it almost inconceivable that he should have committed so gross an error as must have been committed if the cordels were only of the length of 50 varas. On the diseño which accompanied the grant, and a copy of which is attached to the act of judicial measurement, is a scale of two leagues, of 5,000 varas each. By this scale the distance from the solar to the rincon is about 5,000 varas, or one league, approximating with tolerable closeness to the actual distance between those points. By the same scale the distance from the Aguage to the Laguna de Locaire and the roblar beyond it appears to be about two leagues. If, then, the cordels referred to were of the length of only fifty varas, the error in the measurement is unaccountable, for the lengths of the lines were not merely but about half as great as the distances actually run, but were only half as great as the distances indicated by the scale of the diseño according to which the grant was made, and which was before the alcalde in making the measurement. On the diseño which accompanies the expediente, there is traced a line from north to south, and at a distance from the hills, as shown by the scale, considerably exceeding that of the western line, as fixed by the official survey, or as pointed out by Pico to Mr. Healy. This was evidently intended as the western exterior boundary of the tract granted; and no reason can be assigned why Pico, in running to the west, should have stopped at a point so far short of the exterior boundary as to make the rancho not much more than one-third of a league in width.

On the whole, it appears to me inconsistent and inadmissible, after ascertaining the gross errors which have been committed with regard to the lengths of the eastern and western lines, to accept the mention in the act of possession of the length of the northern line, as fixing its point of termination, and this merely on the strength of the fact, that at or near that distance from the starting point, a marked tree is found not identified by any witness as the tree to which the measurement was actually made. Such seems to have been the view of the United States surveyor, by whom the official survey was made; and, after de-

termining the length towards the south of the western line, he has located it, or rather determined the length of the northern line, down the Aguage by quantity, so as to include within the boundaries the one square league granted to Higuera. If, however, we are governed as to the lengths of the lines by the act of possession, and the hills be excluded, as decided by the board, there will be measured to the claimant a tract of not more than three-eighths of a league in extent, less than one-half the quantity granted. I agree, therefore, with Mr. Healy (who has made two surveys of the rancho, one at the instance of the settlers, and the other at that of the United States), in thinking that the official survey is as just and proper a location of the grant as can now, under all the circumstances, be arrived at. The official survey is, therefore, approved.